**Waters, Kraus & Paul**
Kevin Loew (CA Bar No. 238080)
kloew@waterskraus.com
222 N. Pacific Coast Highway, Ste 1900
El Segundo, CA 90245
T: (310) 414-8146
Fax: 310-414-8156

**C.A. Goldberg, PLLC**
Carrie Goldberg (*pro hac vice*)
carrie@cagoldberglaw.com
Hannah Meropol (CA Bar No. 340095)
hannah@cagoldberglaw.com
Adam Massey (*pro hac vice*)
adam@cagoldberglaw.com
16 Court St., 33rd Floor
Brooklyn, NY 11241
T: (646) 666-8908
Fax: 347-599-9998

*Attorneys for Plaintiff John Doe*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN DOE, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>GRINDR INC., a Delaware corporation, and<br>GRINDR LLC, a California corporation,<br><br>Defendants. | **Case. No.:** 2:23-cv-02093 ODW (PDx)<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**<br><br>Date: August 7, 2023<br>Time: 1:30 p.m.<br>Courtroom 5D<br><br>Hon. Otis D. Wright, II |

i

# **TABLE OF CONTENTS**

**INTRODUCTION** ................................................................ **1**

**SUMMARY OF ALLEGATIONS** ..................................... **2**

**ARGUMENT** ...................................................................... **2**

**I. Legal Standard** ........................................................ **2**

**II. Section 230 Does Not Immunize Grindr From Liability** ............... **2**

A. Doe does not treat Grindr as publisher or speaker of third-party content ........................................................... 3

   i. *Lemmon* bars Section 230 immunity .................................. 4

   ii. *A.M. v. Omegle.com, LLC* applied *Lemmon* to deny Section 230 immunity for factually similar products liability and negligence claims ................................................ 6

   iii. The cases upon which Grindr relies are neither controlling precedent nor applicable to the present matter ..................... 7

   iv. Doe's failure to warn claim does not treat Grindr as a publisher or speaker of third-party content .......................... 9

B. Grindr materially contributes to the unlawful conduct at issue in this matter ........................................................ 10

**III. Doe States a Claim Under 18 U.S.C. § 1595 for Violation of 18 U.S.C. § 1591** ......................................................... **11**

A. Doe states a direct perpetrator claim under 18 U.S.C. § 1591(a)(1) ......................................................... 11

B. Doe states a beneficiary claim under 18 U.S.C. § 1591(a)(2) .... 14

**IV. The First Amendment Does Not Bar Doe's State Claims** .......... **15**

**V. The Grindr App is a product subject to product liability claims** **16**

**VI. Doe Alleges a Cognizable Duty** ................................... **19**

**VII. Doe States a Claim for Negligent Misrepresentation** ............... **20**

**VIII. Doe Sufficiently Alleges that Grindr Proximately Caused his Injuries ........................................................ 21**

    A. Intervening third-party conduct was not a superseding cause of Doe's injuries ............................................... 21

    B. Doe alleges that Grindr's conduct was a substantial factor in his injuries ........................................................ 22

**CONCLUSION ........................................................ 24**

# TABLE OF AUTHORITIES

**Cases**

*924 Bel Air Rd., LLC v. Zillow Grp., Inc.*, No. 2:19-cv-01368-ODW
(AFMx), 2020 WL 774354 (C.D. Cal. Feb. 18, 2020). ........................... 9

*A.M. v. Omegle.com LLC*, No. 3:21-cv-0164-MO,
2023 WL 1470269 (D. Or. Feb. 2, 2023). ..................................... passim

*A.M. v. Omegle.com, LLC*, 614 F.Supp.3d 814 (D. Or. 2022). .............. 1, 6, 7

*Akins v. Sonoma County*, 67 Cal.2d 185 (1967). .......................................... 22

*Ash v. North American Title Co.*, 223 Cal.App.4th 1258 (2014). ................. 21

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009). ........................................................ 2

*Barnes v. Yahoo!, Inc.*, 570 F.3d 1096 (9th Cir. 2009). ................................. 3

*Bigbee v. Pacific Tel. & Tel. Co.*, 34 Cal.3d 49 (1983). ............................... 22

*Bride v. Snap Inc.*, No. 2:21-cv-06680-FWS-MRW,
2023 WL 2016927 (C.D. Cal. Jan. 10, 2023). .......................................... 5

*Doe v. Internet Brands*, 824 F.3d 846 (9th Cir. 2016). ...................... 5, 9, 10

*Doe v. Internet Brands*, No. CV 12-3626-JFW (PJWx),
2016 WL 11824793 (C.D. Cal. Nov. 14, 2016). ...................................... 20

*Doe v. Mindgeek USA Inc.*, 574 F.Supp.3d 760 (C.D. Cal. 2021),
*abrogated by Does 1-6 v. Reddit, Inc.*, 51 F.4th 1137 (9th Cir. 2022)...... 11

*Doe v. MySpace*, 528 F.3d 413 (5th Cir. 2008). ............................................ 8

*Doe v. Reddit, Inc.*, No. SACV 21-00768 JVS (KESx),
2021 WL 586904 (C.D. Cal. Oct. 7, 2021). ............................................. 9

*Does 1-6 v. Reddit, Inc.*, 51 F.4th 1137 (9th Cir. 2022). .................... 11, 14, 15

*Dyroff v. Ultimate Software Grp., Inc.*,
934 F.3d 1093 (9th Cir. 2019). ....................................................... 19, 20

*Fair Housing Council of San Fernando Valley v. Roommates.Com, LLC*,
521 F.3d 1157 (9th Cir. 2008). .................................................... 3, 10, 11

*Fields v. Twitter*, 881 F.3d 739 (9th Cir. 2018). .......................................... 23

*Fluor Corp. v. Jeppesen & Co.*, 170 Cal.App.3rd 468 (1985). ..................... 18

*Frausto v. Department of California Highway Patrol*,
   53 Cal.App.5th 973 (Cal. Ct. App. 2020). ................................. 23

*Gamache v. Airbnb, Inc.*, No. CGC-14-541477,
   2017 WL 3431651 (Cal. Ct. App. Aug. 10, 2017)................................. 23

*Gavra v. Google, Inc.*, No.: 5:12–CV–06547–PSG,
   2013 WL 3788241 (N.D. Cal Jul. 17, 2013). .......................................... 20

*Gonzalez v. Google LLC*, 2 F.4th 871 (9th Cir. 2021),
   *vacated*, 598 U.S. __, 2023 WL 3511529 (2023). ............................ 3, 11

*Hardin v. PDX, Inc.,* 227 Cal.App.4th 159 (2014)........................................ 17

*Harris v. Burlington Northern Santa Fe Railroad*, No. EDCV 09-197 ABC
   (JCx), 2013 WL 12122668 (C.D. Cal. Jul. 12, 2013). ........................... 19

*Herrick v. Grindr*, 765 F.App'x 586 (2d Cir. 2019). ............................... 7, 8

*Herrick v. Grindr, LLC*, 306 F.Supp.3d 579 (S.D.N.Y. 2018),
   *aff'd*, 765 App'x 586 (2d Cir. 2019). ....................................... 17

*HomeAway.com, Inc. v. City of Santa Monica*,
   918 F.3d 676 (9th Cir. 2019)........................................................ 9

*In re Seagate Tech. LLC Litig.*, 233 F. Supp. 3d 776 (N.D. Cal. 2017)....... 21

*Jackson v. Airbnb, Inc.*, No. CV 22-3084 DSF (JCX),
   2022 WL 16752071 (C.D. Cal. Nov. 4, 2022). ................................. 18, 20

*Jewel v. NSA*, 673 F.3d 902 (9th Cir. 2011). .................................................. 2

*Koepke v. Loo*, 18 Cal.App.4th 1444 (1993)................................................. 22

*Lemmon v. Snap, Inc.*, 995 F.3d 1085 (9th Cir. 2021). ......................... passim

*Leslie G. v. Perry & Associates*, 43 Cal.App.4th 472 (1996). ..................... 22

*Lewis v. Time Inc.*, 83 F.R.D. 455 (E.D. Cal. 1979),
   *aff'd*, 710 F.2d 549 (9th Cir. 1983). ........................................ 16

*Lugtu v. California Highway Patrol*, 26 Cal.4th 703 (2001). ..................... 19

*Malwarebytes Inc. v. Enigma Software Group USA, LLC*,

141 S.Ct. 13 (2020). ............................................................... 8

*Mayall ex rel. H.C. v. USA Water Polo, Inc.*,

909 F.3d 1055 (9th Cir. 2018). .................................................. 19

*Oberdorf v. Amazon.com Inc.*, 930 F.3d 136  (3d Cir. 2019),

*vacated and reh'g en banc granted*, *Oberdorf v. Amazon.com Inc.*, 936

F.3d 182 (3rd Cir. 2019). ........................................................ 18

*Pavoni v. Chrysler Grp., LLC*, 789 F.3d 1095 (9th Cir. 2015). ................... 22

*Ripplinger v. Collins*, 868 F.2d 1043 (9th Cir. 1989). ........................... 16

*Schafer v. State Farm Fire & Cas. Co.*,

507 F.Supp.2d 587 (E.D. La. 2007). ........................................ 17

*Smith v. California*, 361 U.S. 147 (1959). ............................... 15, 16

*Sonneveldt v. Mazda Motor of Am., Inc.*, No. 8:19-cv-01298-JLS-KES,

2021 WL 62502 (C.D. Cal. Jan. 4, 2021). ................................. 21

*United States v. U.S. Dist. C. for Cent. Dist. of Cal.*,

858 F.2d 534 (9th Cir. 1988). ................................................. 16

*Winter v. G.P. Putnam's Sons*, 938 F.2d 1033 (9th Cir. 1991). ................. 17

*Young v. Facebook, Inc.*, 2010 WL 4269304 (N.D. Cal Oct. 25, 2010). ..... 20

*Ziencik v. Snap, Inc.*, No. CV 21-7292-DMG (PDx),

2023 WL 2638314 (C.D. Cal. 15  Feb. 3, 2023). ........................ 18, 20


**<u>Statutes</u>**

18 U.S.C. § 1591(a)(1) .......................................... 11, 12, 13, 14

18 U.S.C. § 1591(a)(2) .......................................... 11, 14, 15

18 U.S.C. § 1591(e)(3) ................................................ 13

18 U.S.C. § 1595 ...................................................... 11

18 U.S.C. § 1595(a). .................................................... 3

47 U.S.C. § 230 .............................................. passim

47 U.S.C. § 230(e)(5). ............................................. 3, 11

Cal. Penal Code § 261.5. ................................................................ 19

Cal. Penal Code § 31 ...................................................................... 19


**<u>Rules</u>**

Fed. R. Civ. P. 12(b)(6) .................................................................... 2


**<u>Constitutional Provisions</u>**

U.S. Constitution, First Amendment .................................... 1, 15, 16


**<u>Other Authorities</u>**

California Department of Education, "Safe Spaces for LGBTQ+ Students"
    (last accessed May 13, 2023), available at
    https://www.cde.ca.gov/pd/ee/c1b.asp. .................................. 21

Restatement (Third) of Torts: Product Liability § 19. .......................... 17, 18

1    **TO THE COURT AND ALL PARTIES OF RECORD:**

2         Plaintiff JOHN DOE ("Plaintiff" or "Doe") opposes Defendants'

3    Grindr Inc. and Grindr LLC (together, "Grindr") Motion to Dismiss the First

4    Amended Complaint (Dkt. No. 37) as follows:

5                    **MEMORANDUM OF POINTS AND AUTHORITIES**

6    **INTRODUCTION**

7         The Court should deny Grindr's motion to dismiss. Doe's action is

8    based on injuries he sustained when Grindr offered him, at age 15, to adult

9    men who raped him. Grindr, the manufacturer of a multi-functional product,

10   claims it is but a "forum for speech," Dkt. No. 37 (*hereinafter* "Mot.") p. 14,

11   and therefore deserving of immunity under 47 U.S.C. § 230 ("Section 230").

12   However, Doe's five state claims do not treat Grindr as a publisher of third-

13   party content. The Ninth Circuit has unequivocally determined that internet

14   companies are not entitled to Section 230 immunity for claims grounded in

15   product liability. *Lemmon v. Snap, Inc.,* 995 F.3d 1085, 1087 (9th Cir. 2021).

16   Grindr, a prominent hook-up application, attempts to skirt responsibility for

17   profiting from the children it recruits to its product and then matches with

18   adult users for in-person sexual encounters. To dismiss Doe's claims would

19   be an extravagant interpretation of Section 230 that clashes with how courts

20   in the Ninth Circuit have construed *Lemmon. See e.g.*, *A.M. v. Omegle.com,*

21   *LLC*, 614 F.Supp.3d 814 (D. Or. 2022).

22        Doe's sixth claim brought under 18 U.S.C. § 1595, to the extent it

23   treats Grindr as a publisher, falls within an explicit exception to the

24   imposition of Section 230 immunity.

25        This Court should further deny Grindr's motion to dismiss because

26   Doe's state claims do not run afoul of the First Amendment, the Grindr App

27   is a product under California product liability law, and Doe sufficiently

28   pleads negligence and negligent misrepresentation.

Accordingly, the Court should deny Grindr's motion to dismiss in its entirety.

**SUMMARY OF ALLEGATIONS**

Grindr's product, the "Grindr App," is the world's largest online product that matches LGBQ+ people for in-person sexual encounters. Dkt. No. 34 (*hereinafter* "FAC") ¶ 3. Grindr markets the Grindr App to children and allows children to create accounts without parental permission or supervision. *Id.* ¶¶ 6, 35-40. Grindr then matches the children with adult users for in-person sexual encounters. *Id.*

In April 2019, Doe, a closeted 15-year-old living with autism and ADHD in a small town, fell victim to Grindr's marketing. *Id.* ¶¶ 45-53. Over the course of four days, Grindr matched Doe with four adults, each of whom raped him. *Id.* ¶¶ 54-63. Three of the four were criminally convicted for crimes against Doe. *Id.* ¶ 66.

Doe brings six causes of action against Grindr under theories of strict products liability, negligence, negligent misrepresentation, and trafficking under 18 U.S.C. § 1595(a). *Id.* ¶¶ 89-174.

**ARGUMENT**

**I.   Legal Standard**

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts "must accept all factual allegations of the complaint as true" and "draw all reasonable inferences in favor" of the plaintiff. *Jewel v. NSA*, 673 F.3d 902, 907 (9th Cir. 2011).

**II.   Section 230 Does Not Immunize Grindr From Liability**

Section 230 precludes liability for (1) a provider or user of an interactive computer service (2) who plaintiff seeks to treat as a publisher or

speaker of (3) information provided by another information content provider. *Gonzalez v. Google LLC,* 2 F.4th 871, 891 (9th Cir. 2021) (quoting *Barnes v. Yahoo!, Inc.,* 570 F.3d 1096, 1100-01 (9th Cir. 2009), *vacated on other grounds*, 598 U.S. __, 2023 WL 3511529 (2023).

Section 230 does not shield Grindr from liability for Claims 1-5, because Doe's claims do not treat Grindr as a publisher or speaker, nor are they based on information provided by another information content provider. Doe's sixth claim, for trafficking under 18 U.S.C. § 1595(a), to the extent it treats Grindr as a publisher of third-party content, is statutorily exempt from Section 230 immunity. *See* 47 U.S.C. § 230(e)(5).

## A. Doe does not treat Grindr as publisher or speaker of third-party content

To determine whether Section 230 will apply to protect a defendant from liability, "courts must ask whether the duty that the plaintiff alleges the defendant violated derives from the defendant's status or conduct as a 'publisher or speaker'" of third-party content. *Barnes*, 570 F.3d at 1102. "Publishing encompasses 'any activity that can be boiled down to deciding whether to exclude material that third parties seek to post online.'" *Gonzalez*, 2 F.4th at 892 (quoting *Fair Housing Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1170-71 (9th Cir. 2008)). A defendant is a publisher if it "reviews material submitted for publication, perhaps edits it for style or technical fluency, and the decides whether to publish it." *Barnes*, 570 F.3d at 1102.

Grindr fails to articulate, because it can't, what third party information is at play. Doe's claims are not based upon injuries resulting from Grindr's role reviewing, editing, or deciding whether to publish third-party content.

Instead, Doe seeks to hold Grindr liable for Grindr's own conduct: Grindr's design, development, and sale of a defective product – the Grindr

App – that matches children with geographically proximate adult men for in-person sex acts. After a Grindr App user creates an account, the Grindr App matches geographically proximate users to one another. *FAC* ¶ 31. Grindr then provides both matched users with information about how proximate they are to one another. *Id.* ¶ 32. It is not until after the Grindr App matches the users that they can communicate privately through its direct messaging feature. *Id.* ¶ 33.

Therefore, third-party content is not, as Grindr argues, "the inescapable genesis of Plaintiff's injuries." *Mot.* p. 8. Instead, Doe's claims are based upon Grindr's conduct *independent of* third-party content: the matching of geographically proximate children and adult men for in-person sexual encounters.

### i. *Lemmon* bars Section 230 immunity

The Ninth Circuit's decision in *Lemmon* is directly applicable to this matter, and rejects the imposition of Section 230 immunity. *Lemmon* involved two teenagers who died in a car accident at speeds of 113-123 mph, having just opened the Snapchat application to use one of its features to document and publish their speed. 995 F.3d. at 1088.

*Lemmon* held that the products liability action did not treat Snap as a publisher or speaker of third-party content subject to Section 230's protections, but instead as a manufacturer of a defectively designed product. *Id.* at 1092. The court was emphatic that the duty underlying a products liability claim "differs markedly from the duties of publishers as defined in the CDA. Manufacturers have a specific duty to refrain from designing a product that poses an unreasonable risk of injury or harm to consumers. Meanwhile, entities acting solely as publishers… generally have no similar duty." *Id.* (internal citations omitted).

Similarly here, Doe's products liability and negligence claims do not treat Grindr as a publisher or speaker of third-party content. Like in *Lemmon*, Doe's claims are based upon the Grindr App's defective design, including the combination of its geolocation technology and ineffective age screening which together match geographically proximate adults and children for in-person sexual encounters. *FAC* ¶¶ 26-33, 96. Doe's claims do not depend on allegations that editorial moderation would have prevented him from being matched with adult men.

*Lemmon* instructs further that a claim springs from a defendant's role as a manufacturer, not a publisher, where the defendant could have taken "reasonable measures to design a product more useful than it was foreseeably dangerous – without altering that content that [its] users generate." 995 F.3d at 1092 (citing *Doe v. Internet Brands*, 824 F.3d 846, 851 (9th Cir. 2016)). Here, Doe's claim treats Grindr as a manufacturer, not a publisher, because Grindr could have fulfilled its duty to not design an unreasonably dangerous product by fixing its broken system for determining age, discontinuing its marketing toward adolescents, or using geo-fencing technologies to prevent the use of the Grindr App at schools (an obvious way for predators to find kids) – neither of which involve publishing third party content. *FAC* ¶¶ 107(a)-(c). These facts indicate why Grindr's reliance on *Bride v. Snap Inc.* is unavailing. No. 2:21-cv-06680-FWS-MRW, 2023 WL 2016927, at *5 (C.D. Cal. Jan. 10, 2023) (distinguishing *Lemmon* because the *Bride* plaintiffs' claims were grounded in a duty that would "necessarily require [defendants] to monitor third-party content" to stop abusive messaging) (citations omitted).

Under *Lemmon*, the Court should deny Grindr Section 230 immunity.

ii. ***A.M. v. Omegle.com, LLC*** **applied** *Lemmon* **to deny**
**Section 230 immunity for factually similar products**
**liability and negligence claims**

In *Omegle*, the court considered claims analogous to those alleged in this matter to deny defendant Omegle's motion to dismiss on Section 230 grounds. 614 F.Supp.3d at 821. Omegle is a web-based product that randomly pairs strangers for one-on-one chats. *Id.* at 817. When plaintiff A.M. was eleven years old[1], Omegle "matched" her with an adult man who forced her to send him pornography of herself and recruit other minors for him to abuse. *Id.* The *Omegle* court applied *Lemmon* to hold that A.M.'s products liability and negligence claims did not treat Omegle as the publisher or speaker of third-party content, and thus Section 230 did not apply.

This Court should find that Doe does not treat Grindr as a publisher or speaker of third-party content for the same reason that *Omegle* found the same: Grindr, like Omegle, could have cured its product defects "by designing a product so that it did not match minors and adults." *Omegle*, 614 F.Supp.3d at 819. Like in *Omegle*, Doe "is not claiming that [Grindr] needed to review, edit, or withdraw any third-party content to meet this obligation…. [And] the content sent between [Doe] and [the men who raped him] does not negate this finding or require that [the Court] find [Grindr] act as a publisher." *Id.*

Moreover, the *Omegle* court found A.M.'s claims did not rest on third-party content: "Plaintiff's contention is that the product is designed in a

---

[1] It was inconsequential in the *Omegle* decision that A.M. used the 13+ product when she was 11 years old. Grindr's repeated statements that Doe "lied" about his age are similarly irrelevant, not only because comparative fault is a question reserved for the jury, but also because of Doe's allegations that 1) Grindr actively advertises to minors and 2) Grindr knows children uses its product but refuses to mitigate the risk of harm to them. *FAC* ¶¶ 35-42 105-107.

way that connects individuals who should not be connected (minor children and adult men) and that it does so before any content is exchanged between them." *Id.* at 820-21. Similarly here, Doe alleges that the Grindr App product is defective because it pairs adults with children, which occurs independently of the creation of any third-party content. *FAC* ¶¶ 31, 33.

Notably, Omegle is *more* of an online publisher than Grindr and A.M.'s injuries were *more* content-based than Doe's. Omegle facilitates online interactions, while Grindr facilitates offline ones; A.M.'s injuries involved her online content, while Doe's involved in-person sexual encounters.

The *Omegle* court denied Section 230 immunity for products liability and negligence claims akin to those alleged here, and this Court should reach the same conclusion.

### iii. The cases upon which Grindr relies are neither controlling precedent nor applicable to the present matter

The primary cases upon which Grindr relies for Section 230 protections are distinguishable, because they involve claims based on a defendant's failure to monitor third-party content.

First, Grindr relies on *Herrick v. Grindr*, 765 F.App'x 586 (2d Cir. 2019), a non-precedential decision from outside the Ninth Circuit which held that Section 230 barred the plaintiff's claims. However, *Herrick* distinctively involved claims that Grindr failed to prevent the plaintiff's malicious ex-boyfriend from repeatedly using the Grindr App as a tool of harassment. *Id.* at 588. The *Herrick* court determined that the plaintiff's claims treated Grindr as a publisher of third-party content because they were based upon Grindr's editorial decision to allow the ex-boyfriend to continue using the product. *Id.* at 590.

In contrast to *Herrick*, Doe's claims against Grindr are not based on its failure to ban his rapists from using the Grindr App, but on its product features that match geographically proximate children with adults for in-person sexual encounters. *FAC* ¶¶ 13, 27-33, 96, 98, 106, 111, 118-20, 129-31. And notably, the Supreme Court condemned the outcome in *Herrick* in its denial of certiorari in *Malwarebytes Inc. v. Enigma Software Group USA, LLC*, 141 S.Ct. 13 (2020), a case pre-dating *Lemmon* in which Justice Thomas cited *Herrick* as an example of the improperly broad application of Section 230 immunity to lawsuits alleging product defects.

Second, Grindr relies on *Doe v. MySpace*, another non-controlling decision outside of the Ninth Circuit, involving a teen girl, Julie Doe, who was sexually assaulted by a man she met on the MySpace social media platform. 528 F.3d 413, 416 (5th Cir. 2008). *MySpace* held Section 230 barred the plaintiffs' negligence claims – which did not plead MySpace was a defective product – because the claims were grounded in communications exchanged between Julie and the man on MySpace, and thus treated MySpace as a publisher of third-party content. *Id.* at 419-20.

However, the present matter is distinguishable from *MySpace*, because Doe's claims are not rooted in his communications over the Grindr App with the adult men who raped him, but in the Grindr App's defective design which foreseeably paired him with adult individuals for in-person sexual encounters. *FAC* ¶¶ 13, 27-33, 96, 98, 106, 111, 118-20, 129-31.  The product's geolocation features identified Doe as a target for his rapists as soon as he logged onto the Grindr App, regardless of any speech, and facilitates in-person encounters. Grindr's reliance on *924 Bel Air Rd., LLC v.*

*Zillow Grp., Inc.*, No. 2:19-cv-01368-ODW (AFMx), 2020 WL 774354 (C.D. Cal. Feb. 18, 2020), is unavailing for the same reason.[2]

Furthermore, that Grindr "allows its users to transmit user-generated content to one another does not detract from the fact that [Doe] seek[s] to hold [Grindr] liable for its role in violating its distinct duty to design a reasonably safe product." *Lemmon*, 995 F.3d at 1092. The issue of whether such third-party content was a but-for cause of Doe's damages is similarly inapplicable. *See HomeAway.com, Inc. v. City of Santa Monica*, 918 F.3d 676, 682 (9th Cir. 2019) (rejecting "use of a 'but-for' test that would provide immunity under the CDA solely because a cause of action would not otherwise have accrued but for the third-party content."); *see also Lemmon*, 995 F.3d at 1093 n.4 (similar).

### iv. Doe's failure to warn claim does not treat Grindr as a publisher or speaker of third-party content

The Ninth Circuit does not extend Section 230 protections to defendants for failure to warn claims where the claims are unrelated to a defendant's efforts to monitor user-generated content and the defendant knew its product endangered its users. Such was the holding in *Internet Brands*, in which the plaintiff alleged the website ModelMayhem.com knew that sexual predators using its product posed a risk to other users, but negligently failed to warn her about that risk. 824 F.3d at 848-49, 853-54.

Like in *Internet Brands*, Doe's failure to warn claim "does not arise from an alleged failure to adequately regulate access to user content or to

---

[2] Grindr's Motion to Dismiss mistakenly asserts that this District "applied *MySpace*" in its 2021 decision in *Doe v. Reddit, Inc.*, No. SACV 21-00768 JVS (KESx), 2021 WL 586904 (C.D. Cal. Oct. 7, 2021). *See Mot.* p. 7. The *Reddit* decision does not mention *MySpace*. Regardless, *Reddit* is otherwise distinguishable, because the plaintiff's claims for unjust enrichment and for distribution of private sexually explicit materials were based on photos and videos published by third parties to Reddit's website. *Reddit*, 2021 WL 586904, at *6.

monitor internal communications that might send up red flags about sexual predators." *Id.* at 853. Instead, as argued extensively above, Doe's failure to warn claim is based on allegations of Grindr's conduct – matching geographically proximate children with adults – which occurs independently of the creation of communications between those users and which poses a risk of sexual abuse to children using the product. *See, e.g., FAC* ¶¶ 4, 6, 13, 31-33, 78, 96, 98, 118.

Additionally, like in *Internet Brands*, Doe alleges that Grindr knew of the risk of sexual exploitation that the Grindr App posed to the many children it knew used the Grindr App prior to his use of the product. *Id.* ¶¶ 78-84, 106, 118-19, 129-30, 158-64. Doe alleges that Grindr not only failed to warn him of this risk, but also purposefully markets the Grindr App to children in spite of the known risk of sexual abuse. *Id.* ¶¶ 7, 35-42. Doe's failure to warn claim is therefore akin to that at issue in *Internet Brands*, and should not be barred by Section 230.

Further, no authority supports Grindr's narrow construction of *Internet Brands* requiring allegations that the defendant had actual knowledge of a criminal threat posed by a specific individual to specific users of the defendant's product. *See Mot.* p. 9. *Cf. Lemmon*, 995 F.3d at 1092-93 (relying on *Internet Brands* to bar Section 230 protections in the broad context of products liability and negligence claims alleging that a product was foreseeably dangerous).

## B. Grindr materially contributes to the unlawful conduct at issue in this matter

Section 230 protections do not apply where a defendant "contributes materially to the alleged illegality of the conduct" on its platform. *Roommates*, 521 F.3d at 1168. "A 'material contribution' does not refer to 'merely . . . augmenting the content generally, but to materially contributing

*to its alleged unlawfulness.*'" *Gonzalez v. Google*, 2 F.4th 871, 892 (9th Cir. 2021) (quoting *Roommates*, 521 F.3d at 1167–68).

Section 230 protections are therefore unavailable to Grindr, because Doe alleges that Grindr materially contributes to foreseeable illegal conduct – the monetization of statutory rape – by matching geographically proximate children with adults on the Grindr App. *FAC* ¶¶ 13, 27-33, 96, 98, 106, 111, 118-20, 129-31. Doe alleges that Grindr is well aware that a meaningful percentage of its users are children under the age of eighteen. *Id.* ¶¶ 5, 75, 78. *See Doe v. Mindgeek USA Inc.*, 574 F.Supp.3d 760, 776 (C.D. Cal. 2021), *abrogated on other grounds by Does 1-6 v. Reddit, Inc.*, 51 F.4th 1137 (9th Cir. 2022) (rejecting Section 230 immunity because defendants "materially contributed to" the development of illegal child pornography on their website).

### III.   Doe States a Claim Under 18 U.S.C. § 1595 for Violation of 18 U.S.C. § 1591

As Grindr concedes, claims under 18 U.S.C. § 1595 for violation of 18 U.S.C. § 1591(a)(1) or § 1591(a)(2) are exempt from Section 230 immunity. 47 U.S.C. § 230(e)(5)(A). Doe adequately pleads that Grindr violated both offenses.

### A. Doe states a direct perpetrator claim under 18 U.S.C. § 1591(a)(1)

To state a claim under subsection (a)(1), Doe must allege two elements. *Omegle*, No. 3:21-cv-0164-MO, 2023 WL 1470269, at * 3 (D. Or. Feb. 2, 2023). First, Grindr "must have 'knowingly' recruited, enticed, obtained, or solicited 'by any means' a person." *Id.* (quoting 18 U.S.C. § 1591(a)(1)). Here, Doe alleges that Grindr recruited users, including himself, to use its product for "a safe space where you can discover, navigate, and get zero feet away from the queer world around you," and that "Grindr markets

the Grindr App towards children" on social media platforms including Instagram and TikTok. *FAC* ¶¶ 35-40, 148. Doe also alleges that Grindr's revenue model is based on increasing traffic to its platform, *id.* ¶¶ 24, 146, "so the more users it can 'recruit,' 'entice," or 'solicit,' the better." *Omegle*, 2023 WL 1470269, at *3. *Omegle* found that the plaintiff met the first element of her subsection (a)(1) claim through exceedingly similar allegations, and this Court should conclude the same.

The second element of a claim under subsection (a)(1) requires that a defendant recruit people knowing, or in reckless disregard of, two facts: "that the person recruited is under 18 years old… [and] that the person 'will be caused to engage in a commercial sex act.'" *Id.* (quoting 18 U.S.C. § 1591(a)(1)). Doe alleges that children frequently use the Grindr App, Grindr is aware of this fact, Grindr markets the Grindr App to children, and Grindr's age verification features are ineffective to prevent children from using the Grindr App. *See, e.g., FAC* ¶¶ 5, 7-8, 27-28, 35-41, 47-50, 75, 78. These allegations are sufficient to show that Grindr recruited children to the Grindr App knowing, or in reckless disregard of, their status as minors.

Doe also sufficiently alleges that Grindr, a dating application, knew, or was in reckless disregard of, the fact that children using the Grindr App would be caused to engage in sex acts. *Id.* ¶ 4 ("For more than a decade Grindr…has known its core product facilitates the sexual predation of children"); ¶ 31 ("The Grindr App functions by 'matching' geographically proximate users with one another… When Grindr matches two users, Grindr provides both users with information about how proximate they are to one another"); ¶ 42 ("[S]ince 2015 over 100 adult men have faced criminal charges in the United States related to child sexual exploitation using Grindr"); ¶¶ 78-81, 158-65 (alleging numerous publicized accounts of child users of the Grindr App being caused to engage in sex acts predating Doe's

use of the product); ¶ 151 ("Grindr knows that children use the application and Grindr matches those children with adults, knowing that it is facilitating in-person sexual experiences between the children and adults."); ¶ 157 ("Grindr knew that Predators frequented the Grindr App for the purposes of meeting children and engaging in child sexual exploitation."); ¶ 160 (a study published in the June 2018 issue of Journal of Adolescent Health revealed that as many as 50% of all sexually active boys who identify as gay use the Grindr App to meet partners for sex"). Doe alleges he was a child who Grindr recruited to use the Grindr App and that his use of the product caused him to engage in sex acts, so he has also pleaded these mens rea elements of 18 U.S.C. §1591(a)(1) with specificity as to himself. *FAC* ¶¶ 47-63, 170-71.

Such a conclusion is supported by *Omegle*, which found similar allegations – that Omegle was aware its users engage in sexual conduct on their platform, and that "multiple news articles detail[ed] stories of minor being exploited or abused through Omegle" prior to the events involving the plaintiff occurred – sufficient to plead that Omegle knew or recklessly disregarded that children using its platform, including the plaintiff, would be caused to engage in sex acts. 2023 WL 1470269, at *3.

Finally, Doe sufficiently pleads that Grindr knew or recklessly disregarded that his sex acts would be commercial. A commercial sex act is "any sex act, on account of which anything of value is given to or received by any person." 18 U.S.C. § 1591(e)(3). "Every court to have considered this definition in depth has found that it should be read broadly." *Omegle*, 2023 WL 1470269, at *4. It is not necessary that predators paid Grindr to abuse children. *Id.* Doe need only allege that Grindr "knew or recklessly disregarded the fact that it was receiving compensation from advertisers on account of the sex acts taking place on its website, some of which involved minors." *Id.*

13

Here, Doe pleads that Grindr receives compensation from advertisers because of the sexual activity that stems from use of the product, *FAC* ¶¶ 3, 24, 146, 172. Crucially, Doe alleges that Grindr receives this compensation while simultaneously marketing to children, prompting children to misrepresent their ages when using the Grindr App, failing to use available safety measures – like age verification or geo-fencing to prevent use of its product at schools – to avoid matching children with geographically proximate adult strangers, and prompting users to advertise themselves for sex acts by describing their physical attributes and sexual preferences on their Grindr App profiles. *FAC* ¶¶ 7-8, 13, 27-33, 35-41, 75-78, 107(a)-(c). *Cf. Omegle*, 2023 WL 1470269, at *4 (allegations that Omegle received advertising revenue while lacking age verification and matching minors with adults through use of its product supported finding that it knew or should have known the sex acts were commercial).

The court should further find that Grindr knew, or recklessly disregarded, that the rapes of Doe would be commercial because Grindr "could make changes that would minimize predators' access to children," for example, through available age verification technology, preventing use of its product at schools, or by monitoring users. *Id.*

Accordingly, Doe states a claim under 18 U.S.C. § 1591(a)(1).

**B. Doe states a beneficiary claim under 18 U.S.C. § 1591(a)(2)**

To state a claim under subsection (a)(2), Doe must allege violation of subsection (a)(1) from which Grindr knowingly "benefits, financially or by receiving anything of value." 18 U.S.C. § 1591(a)(2).

Unlike *Reddit*, which affirmed dismissal of a subsection (a)(2) claim for Reddit's failure to prevent circulation of CSAM on its platform, 51 F.4th at 1145-46, Grindr "did more than 'turn a blind eye to the source of [its] revenue'" by participating in the trafficking venture. *Omegle*, 2023 WL

14

1470269, at *5 (distinguishing *Reddit*, 51 F.4th at 1145, to find plaintiff stated claim under subsection (a)(2)). As described above, Doe alleges that Grindr knew, or recklessly disregarded, that it caused sex acts between minors and adults – including between Doe and the four men who raped him – and that Grindr financially benefitted from those sex acts through advertising revenue.

The purpose of the app and its role in facilitating private sexual connections between users are critical factors. *See, e.g., id.* ("Reddit is used to create groups and threads, while Omegle pairs users one-on-one.") Unlike Reddit's web-based platform on which users post content to "small, searchable forums devoted to specific topics," *Reddit*, 51 F.4th at 1139, the Grindr App is primarily an application that matches geographically proximate individuals for the purpose of in-person sexual encounters. *FAC* ¶¶ 3, 8, 13, 30-33, 105-06, 150. Like in *Omegle*, these "differences between the products create a massive gap in their use by predators," because Grindr's unique features "present a much great[er] opportunity for coercion than group" and geographically disparate communications. *Id.* Moreover, Doe's "contentions regarding the lack of safeguards and the ease of use by both minors and sexual predators… further differentiate this case from *Reddit*." *Id. See FAC* ¶¶ 27-28, 107(a)-(c).

## IV.   The First Amendment Does Not Bar Doe's State Claims

The First Amendment does not bar Doe's state claims, because Doe does not seek to hold Grindr liable for speech, but for its conduct– product defects that match geographically proximate children with adults for in-person sexual encounters. *FAC* ¶¶ 13, 27-33, 96, 98, 106, 111, 118-20, 129-31.

Grindr relies on *Smith v. California*, 361 U.S. 147 (1959), which invalidated a law imposing strict criminal liability for booksellers that

possess books with obscene content. However, *Smith* stands only for the proposition that "a speaker may not be put at complete peril in distinguishing between protected and unprotected speech." *United States v. U.S. Dist. C. for Cent. Dist. of Cal.*, 858 F.2d 534, 539 (9ᵗʰ Cir. 1988). None of Doe's claims require Grindr to parse speech, *see supra* Section II.A, and therefore do not run afoul of the First Amendment.[3]

The other cases cited by Grindr are similarly inapplicable because they involve claims which impose liability based on a defendant's role as a distributor of third-party content. *See, e.g.*, *Lewis v. Time Inc.*, 83 F.R.D. 455, 464-65 (E.D. Cal. 1979), *aff'd*, 710 F.2d 549 (9ᵗʰ Cir. 1983) (claims based upon defendant's role distributing defamatory content); *Ripplinger v. Collins*, 868 F.2d 1043 (9ᵗʰ Cir. 1989) (strict criminal liability for video sellers of obscene content). The court should accordingly reject Grindr's First Amendment argument.

## V.   The Grindr App is a product subject to product liability claims

Doe sufficiently alleges that the Grindr App is a product under California law. Doe alleges that the Grindr App is a software application downloaded by users onto digital devices. *FAC* ¶ 21. It is a product because it is a tangible good. *Id.* ¶ 34 ("The Grindr App is tangible – it can be seen and heard. It is available for purchase in a uniform form. It can be moved on a screen, opened and closed. It takes up space and memory, depletes batteries. Grindr has obtained patents for [it]"). Like other products, Grindr is designed to be accessed through personal and moveable digital devices, and it is personal and moveable within those devices. *Id.* ¶ 21.

Even if the Court determines the Grindr App is intangible software, treating it as a product is consistent with the Restatement, which defines

---

[3] *Smith* is additionally distinguishable from the present matter because Doe alleges that Grindr had knowledge of the product defects for which he seeks to recover. *FAC* ¶¶ 42, 78-81, 151, 157-165.

"product" to include intangible goods, like electricity and the information contained in navigational charts, when their use is "analogous to the distribution and use of tangible personal property." Restatement (Third) of Torts: Product Liability (*hereinafter* "Restatement") § 19(a), cmt. d. Treating software as a product is also consistent with its characterization as a good covered by the Uniform Commercial Code. *Id.* cmt. d.

*Winter v. G.P. Putnam's Sons*, 938 F.2d 1033, 1035-36 (9th Cir. 1991), held that while an aeronautical navigational chart is a product, "pure thought and expression" contained in a book is not. The Grindr App, a software tool, is more akin to electricity and navigational charts than the ideas and expression contained in books. Further, as described at length, *supra* Section II.A, Doe does not allege product defects related to related to Grindr's "words and ideas" nor to Grindr's role as a publisher of expressive content. Grindr's argument to the contrary is therefore unavailing. *See Mot.* p. 16-17.

Numerous courts, including the Ninth Circuit, have adopted the assumption that products liability law applies to software. *See, e.g. Winter*, 938 F.2d at 1036 (finding computer software may be a product in tort law); *Herrick v. Grindr, LLC*, 306 F.Supp.3d 579, 592 n. 9 (S.D.N.Y. 2018), *aff'd*, 765 App'x 586 (2d Cir. 2019), *cert. denied*, 140 S.Ct. 221 (2019) ("It appears to be common ground between the parties that strict products liability may apply to standardized and mass-downloaded software."); *Hardin v. PDX, Inc.,* 227 Cal.App.4th 159, 170 (2014) (denying motion to dismiss where plaintiff argued software was a product subject to products liability claims); *Schafer v. State Farm Fire & Cas. Co.*, 507 F.Supp.2d 587, 601 (E.D. La. 2007) ("[C]ourts and legal scholars have suggested that defective computer software may give rise to strict products liability in tort").

The cases cited by Grindr for the proposition that the Grindr App is a service, not a product, are distinguishable. In *Jackson v. Airbnb, Inc.*, No. CV 22-3084 DSF (JCX), 2022 WL 16752071, at *9 (C.D. Cal. Nov. 4, 2022), the Court reasoned that AirBnb was more like a "marketplace" than a product, but the Grindr App's features that underlie Doe's claims – a lack of age verification and matching users based on geographic proximity – involve software tools unlike a marketplace.[4] And in *Ziencik v. Snap, Inc.*, No. CV 21-7292-DMG (PDx), 2023 WL 2638314, at *4 (C.D. Cal. 15  Feb. 3, 2023), the court stated without reason that Snapchat is a "non-tangible object," did not mention any particular features akin to "services," and did not address precedent acknowledging that software tools are products.

Finally, when considering whether something is a product, courts consider the product liability doctrine's policy rationale. *Fluor Corp. v. Jeppesen & Co.*, 170 Cal.App.3rd 468, 475 (1985). Treating the Grindr App as a product serves the doctrine's underlying policies of "imposing the loss on the manufacturer who created the risk and reaped the profit," and "the disparity in position and bargaining power that forces the consumer to depend entirely on the manufacturer[.]" Restatement § 19, cmt. a. Grindr created the Grindr App, is responsible for its defects which put children at risk of sexual exploitation, and profits from those defects such that Grindr is incentivized to market the Grindr App to children. *See, e.g.,* FAC ¶¶ 3, 4, 7, 24, 27-33. Finding the Grindr App is a product imposes upon Grindr the losses borne by children like Doe who were harmed by the Grindr App.

---

[4] To accept Grindr's *Jackson* argument undermines Grindr's Section 230 argument because marketplaces are not entitled to Section 230 immunity. *Oberdorf v. Amazon.com Inc.*, 930 F.3d 136  (3d Cir. 2019), *vacated on other grounds and reh'g en banc granted*, *Oberdorf v. Amazon.com Inc.*, 936 F.3d 182 (3rd Cir. 2019).

## VI.    Doe Alleges a Cognizable Duty

Grindr argues Doe's negligence cause of action fails for lack of a cognizable legal duty. However, Doe alleges, *FAC* ¶ 127, that Grindr is subject to California's "general duty… to exercise, in [its] activities, reasonable care for the safety of others." *Mayall ex rel. H.C. v. USA Water Polo, Inc.*, 909 F.3d 1055, 1060 (9th Cir. 2018) (internal quotation marks omitted). Doe also alleges negligence per se based on the duty to not aid in in the rape of a child, *FAC* ¶ 127, which is a criminal offense. Cal. Penal Code §§ 261.5 (criminalizing sexual intercourse with a minor), 31 (imposing criminal liability for aiding and abetting a crime). Negligence per se "is an evidentiary doctrine, not a cause of action[,]" which creates a presumption of negligence based on a statute's violation. *Harris v. Burlington Northern Santa Fe Railroad*, No. EDCV 09-197 ABC (JCx), 2013 WL 12122668, at *3 (C.D. Cal. Jul. 12, 2013).[5]

Disregarding these duties, Grindr argues that Doe must allege a special relationship with Grindr to overcome the pleading standard for nonfeasance. However, Doe's negligence claim is not based in nonfeasance, "when a defendant does not help a plaintiff," but in misfeasance, "when a defendant makes the plaintiff's position worse." *Dyroff v. Ultimate Software Grp., Inc.,* 934 F.3d 1093, 1100-01 (9th Cir. 2019). "[O]ne's general duty to exercise due care includes the duty not to place another person in a situation in which the other person is exposed to an unreasonable risk of harm through the reasonably foreseeable conduct… of a third person." *Lugtu v. California Highway Patrol*, 26 Cal.4th 703, 716 (2001). "Misfeasance, unlike nonfeasance, creates an ordinary duty of care where none may have existed before." *Dyroff*, 934 F.3d at 1101.

---

[5] Should the Court determine Doe has not provided adequate notice of his negligence per se theory of liability, Doe respectfully requests leave to amend the FAC.

Here, Doe's negligence action rests in misfeasance because he alleges that Grindr *created a risk of harm* – sexual abuse – when its product matched him with four geographically proximate men who raped him. *See, e.g., FAC* ¶¶ 52-63, 101, 103. Doe was not in harm's way until he used the Grindr App. These facts distinguish this matter from *Dyroff*, where the defendant's conduct "did not create a risk of harm."

Unlike in *Jackson*, *Ziencik*, and the District Court's decision upon remand in *Internet Brands*, Doe does not allege that Grindr was only 'hosting the opportunity' for harmful conduct. *Jackson*, 2022 WL 16752071, at *7. *Ziencik*, 2023 WL 2638314, *5 (finding plaintiff failed to allege defendant engaged in risk-causing conduct solely by creating and operating its communications platform). *Doe v. Internet Brands*, No. CV 12-3626-JFW (PJWx), 2016 WL 11824793 (C.D. Cal. Nov. 14, 2016) (similar).[6]

## VII.    Doe States a Claim for Negligent Misrepresentation

Grindr first argues that Doe's negligent misrepresentation claim fails for insufficiently identifying Grindr's misrepresentation. However, Doe alleges that Grindr "misrepresented that the Grindr App is designed to create a safe and secure environment for its users." *FAC* ¶ 135. As for the source of Grindr's misrepresentation, Grindr concedes that its Terms of Service state the Grindr App is "designed to create a safe, authentic, and law-abiding community." *Mot.* p. 20. Doe also identifies Grindr's assertion on its website that "[a]t Grindr we've created a safe space where you can discover, navigate and get zero feet away from the queer world around you." FAC ¶ 148.

---

[6] Grindr's Motion to Dismiss also cites inapplicable cases *Gavra v. Google, Inc.*, No.: 5:12–CV–06547–PSG, 2013 WL 3788241 (N.D. Cal Jul. 17, 2013) and *Young v. Facebook, Inc.*, 2010 WL 4269304 (N.D. Cal Oct. 25, 2010). *Gavra* did not address whether the plaintiffs adequately alleged the duty element of negligence claims, and the *Young* decision turned on express disclaimers within the defendant's terms of service.

Second, Grindr relies upon a case about defective water pumps for the proposition that claims about safety are unactionable "puffery." *Sonneveldt v. Mazda Motor of Am., Inc.*, No. 8:19-cv-01298-JLS-KES, 2021 WL 62502, at \*7-8 (C.D. Cal. Jan. 4, 2021). However, "misdescriptions of specific or absolute characteristics of a product are actionable." *In re Seagate Tech. LLC Litig.*, 233 F. Supp. 3d 776, 793 (N.D. Cal. 2017). Grindr's claim that it created a "safe space" for LGBTQ+ users is a misdescription of a specific characteristic of the Grindr App as it distinguishes it from competing dating apps that do not make repeated prominent claims of safety to historically vulnerable consumers. Moreover, "safe space" has a specific meaning within the context of the LGBTQ+ community: a place without fear of bigotry[7].

Finally, Grindr argues that Doe failed to plead that it intended him to rely on its misrepresentations. However, Doe alleges that he acted upon Grindr's safety representations when he accessed the Grindr App with an intent to make LGBTQ+ friends. *FAC* ¶ 11, 47. Doe is not aware of authority requiring that he plead precisely how Grindr intended its misrepresentation to be construed by consumers.

## VIII. Doe Sufficiently Alleges that Grindr Proximately Caused his Injuries

### A. Intervening third-party conduct was not a superseding cause of Doe's injuries

Whether an intervening act is a superseding cause is a question of fact. *Ash v. North American Title Co.*, 223 Cal.App.4th 1258, 1274 (2014). A defendant will not avoid liability where the intervening cause "was foreseeable by the defendant or, if not foreseeable, whether it caused injury of a type which was foreseeable." *Akins v. Sonoma County*, 67 Cal.2d 185,

---

[7] *See* California Department of Education, "Safe Spaces for LGBTQ+ Students" (last accessed May 13, 2023), available at https://www.cde.ca.gov/pd/ee/c1b.asp.

199 (1967). "[W]hat is required to be foreseeable is the general character of the event or harm… not its precise nature or manner of occurrence." *Bigbee v. Pacific Tel. & Tel. Co.*, 34 Cal.3d 49, 57–58 (1983).

While criminal conduct will "ordinarily" constitute a superseding cause, Grindr cannot avoid liability for criminal conduct by a third party "'[i]f the likelihood that a third person may act in a particular manner is the hazard... which makes [Grindr] negligent.'" *Koepke v. Loo*, 18 Cal.App.4th 1444, 1449 (1993) (quoting Rest.2d Torts, § 449). Here, the intervening criminal acts of the four men who raped Doe are not superseding causes of his injuries, because Grindr knew, prior to Doe's use of the Grindr App, that children would use the Grindr App and in doing so would be matched to adults with expectations of sex. Doe alleges numerous publicized accounts of child users of the Grindr App being caused to engage in sex acts predating Doe's use of the product. *FAC* ¶¶ 78-81, 158-65. *See also id.* ¶ 151 ("Grindr knows that children use the application and Grindr matches those children with adults, knowing that it is facilitating in-person sexual experiences between the children and adults."). Grindr cannot avoid liability for causing Doe's injuries because the foreseeable "hazards" of the Grindr App are precisely of the kind which harmed Doe.

### B. Doe alleges that Grindr's conduct was a substantial factor in his injuries

To plead proximate cause, Grindr's conduct must constitute a "substantial factor" in bringing about Doe's harm. *Leslie G. v. Perry & Associates*, 43 Cal.App.4th 472, 481 (1996). This issue is a question of fact reserved for the jury. *Pavoni v. Chrysler Grp., LLC*, 789 F.3d 1095, 1098 n.3 (9th Cir. 2015). The standard is "relatively broad," "requiring only that the contribution of the individual cause be more than negligible or theoretical. Even a very minor force that causes harm is considered a cause

in fact of the injury." *Frausto v. Department of California Highway Patrol*, 53 Cal.App.5th 973, 996 (Cal. Ct. App. 2020) (internal citations and quotation marks omitted).

Here, Doe alleges that Grindr contributed to his injuries when it recruited him to the Grindr App and matched him with geographically proximate adult men for in-person sexual encounters, and four of those men raped him. *FAC* ¶¶ 47-63. Grindr's conduct far exceeds the minimal requirement that its contribution to Doe's injuries be "more than negligible or theoretical."

Grindr's reliance on *Fields v. Twitter* is misplaced, because it was the language of the federal Anti-Terrorism Act at issue which required a heightened standard of causation. 881 F.3d 739, 748 (9th Cir. 2018). *Gamache v. Airbnb, Inc.* is also distinguishable. No. CGC-14-541477, 2017 WL 3431651, at *2 (Cal. Ct. App. Aug. 10, 2017). The *Gamache* plaintiffs failed to allege that the defendant "operated its online platform in a manner that encouraged" the injury-causing third-party conduct. *Id.* However, Doe alleges that Grindr encouraged his injuries by marketing its product to him and other children, prompting him and other users to lie about their ages when using the Grindr App, failing to implement available safety measures to avoid matching children with geographically proximate adult strangers, and prompting Grindr App users to advertise themselves for sex acts by describing their physical attributes and sexual preferences on their Grindr App profiles. *FAC* ¶¶ 7-8, 13, 27-33, 35-41, 47-50, 53-63, 75-78, 107(a)-(c).

This Court should therefore find that Doe sufficiently pleads proximate causation.

**CONCLUSION**

For the reasons stated herein, the Court should deny Grindr's Motion to Dismiss as to all of Doe's causes of action. Alternatively, the Court should grant Doe leave to amend his First Amended Complaint.

Dated: May 26, 2023.

**C.A. Goldberg, PLLC**

By:   */s/ Carrie Goldberg*
Carrie Goldberg (*pro hac vice*)

*/s/ Hannah Meropol*
Hannah Meropol (SBN 340095)

*/s/ Adam Massey*
Adam Massey (*pro hac vice*)

*Attorneys for Plaintiff John Doe*

**FILER'S ATTESTATION**

Pursuant to L.R. 5-4.3.4(a)(2)(i), the undersigned, counsel for Plaintiff John Doe, certifies that the signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

DATED: May 26, 2023

*/s/ Hannah Meropol*
Hannah Meropol

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel for Plaintiff JOHN DOE, certifies that this brief contains 6,995 words, which complies with the word limit of L.R. 11-6.1.

DATED: May 26, 2023

                              */s/ Hannah Meropol*
                              Hannah Meropol

**CERTIFICATE OF SERVICE**

    The undersigned, counsel for Plaintiff JOHN DOE, certifies that PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT was filed with the Court and served electronically through the CM-ECF (Electronic Case Filing) system to all counsel of record and to those registered to receive a Notice of Electronic Filing for this case on this 26th day of May, 2023.

                                       */s/ Hannah Meropol*
                                       Hannah Meropol