O

# United States District Court
# Central District of California

| | |
|---|---|
| JOHN DOE,<br><br>    Plaintiff,<br><br>   v.<br><br>GRINDR INC. et al.,<br><br>    Defendants. | Case № 2:23-cv-02093-ODW (PDx)<br><br>**ORDER GRANTING MOTION TO DISMISS [37]** |

## I.   INTRODUCTION

"This is a hard case—hard not in the sense that the legal issues defy resolution, but hard in the sense that the law requires that [the Court] deny relief to [a plaintiff] whose circumstances evoke outrage." *Jane Doe No. 1 v. Backpage.com, LLC*, 817 F.3d 12, 15 (1st Cir. 2016). The facts of this case are indisputably alarming and tragic. No one should endure what Plaintiff has. However, after careful review and consideration of the facts and applicable law, the Court ultimately determines that Plaintiff's claims are precluded by the Communications Decency Act ("CDA"), 47 U.S.C. § 230. Consequently, as discussed below, the Court **GRANTS** Defendants' Motion to Dismiss the First Amended Complaint ("Motion"). (Mot., ECF No. 37.)[1]

---

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II.   BACKGROUND[2]

Grindr Inc. and Grindr LLC (collectively, "Grindr") own and operate a geosocial dating application for LGBTQ+ individuals (the "Grindr App" or "App"). (First Am. Compl. ("FAC") ¶¶ 3, 22, ECF No. 36.)  The App is free to download and use; Grindr earns revenue through in-app advertisements and tiered subscriptions. (*Id.* ¶¶ 7, 24.)  Grindr users must be over eighteen years old, but Grindr markets the App to minors as well as adults. (*Id.* ¶¶ 29, 35–41.)  To sign up for an account, users must first provide an email address and verify they are over eighteen years old. (*Id.* ¶¶ 26, 29.)  They may then create a unique user profile with their interests and geolocation. (*Id.* ¶¶ 30–32.)  Using this information, the App matches geographically proximate users with one another. (*Id.* ¶ 32.)  The matched users may then communicate using direct messaging features, like private messages, texts, and photos. (*Id.* ¶ 33.)

In the spring of 2019, John Doe was fifteen years old and lived in a small town in Nova Scotia, Canada. (*Id.* ¶¶ 9, 45.)  Doe knew he was gay but was too ashamed to tell his parents. (*Id.* ¶ 10.)  Seeking queer community, Doe installed the Grindr App, misrepresented that he was over eighteen years old, and created a user profile. (*Id.* ¶¶ 11, 48–49.)  Grindr did not verify Doe's age. (*Id.* ¶ 50.)  Over a four-day period, the App matched Doe with four geographically proximate adult men. (*Id.* ¶ 11.)  Doe and the men exchanged direct messages, personal information, and explicit photographs. (*Id.* ¶¶ 53–57 (April 4—Noah Zwicker), 59–60 (April 5—Clarence Butler), 61 (April 6—"Matt"), 62–63 (April 7—Scott Hazelton).)  Doe met each man in person and was sexually assaulted and raped. (*Id.* ¶¶ 57, 60, 61, 63.)  After Doe's mother confronted him about sneaking out, Doe told her he signed up for Grindr, that the App matched him with the adult men, and that the men had raped him. (*Id.* ¶ 64.)  Three of the men are now in prison for sex crimes, while the fourth remains at large. (*Id.* ¶¶ 11, 66.)

---

[2] All factual references derive from Plaintiff's First Amended Complaint, and well-pleaded factual allegations are accepted as true for purposes of this Motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Doe brings this lawsuit against Grindr for child sex trafficking and a defective product, asserting claims of strict product liability, negligence, negligent misrepresentation, and violation of the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. §§ 1591, 1595. (*Id.* ¶¶ 89–174.) Doe contends that Grindr's App is an inherently dangerous software product. He asserts that Grindr knows that minors use the App and that sexual predators use it to target minors. (*Id.* ¶ 78.) On this basis, he alleges that Grindr facilitates sex crimes against children through the defective App. (*Id.* ¶¶ 4, 98.) Grindr moves to dismiss the First Amended Complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). (Mot. 4–5.)

### III.     LEGAL STANDARD

A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). To survive a dismissal motion, a complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement of the claim. *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). The factual "allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff. *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). However, a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

Where a district court grants a motion to dismiss, it should generally provide leave to amend unless it is clear the complaint could not be saved by any amendment. *See* Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). Thus, leave to amend "is properly denied . . . if amendment would be futile." *Carrico v. City & County of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011).

## IV.     DISCUSSION

Grindr moves to dismiss Doe's claims, arguing that they are all barred by the CDA and the First Amendment, and that Doe fails to adequately state his claims against Grindr. (*See* Mot. 1–2.) The Court finds Doe's claims are barred by § 230 of the CDA ("Section 230"), and therefore does not reach Grindr's other arguments.

### A.     Section 230 of the CDA

Section 230 of the CDA immunizes "certain internet-based actors from certain kinds of lawsuits." *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1099 (9th Cir. 2009). The statute provides, in relevant part, that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."  47 U.S.C. § 230(c)(1). Additionally, "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." *Id.* § 230(e)(3).

The Ninth Circuit has developed a three-prong test for determining whether Section 230 immunity applies: "Immunity from liability exists for '(1) a provider or user of an interactive computer service (2) whom a plaintiff seeks to treat, under a state law cause of action, as a publisher or speaker (3) of information provided by another information content provider.'" *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1097 (9th Cir. 2019) (quoting *Barnes*, 570 F.3d at 1100–01). "When a

plaintiff cannot allege enough facts to overcome Section 230 immunity, a plaintiff's claims should be dismissed." *Id.* (citation omitted).

### 1. *Interactive Computer Service*

Doe does not challenge Grindr's status as an "interactive computer service" provider within the meaning of Section 230.[3] (*See* Opp'n 2–11, ECF No. 38.)  Courts interpret the term "'interactive computer service' "expansively."  *Dyroff*, 934 F.3d at 1097.  "[P]roviders of interactive computer services include entities that create, own, and operate applications that enable users to share messages over its internet-based servers," like Grindr.  *Bride v. Snap Inc.*, No. 2:21-cv-06680-FWS (MRWx), 2023 WL 2016927, at *4 (C.D. Cal. Jan. 10, 2023) (citing *Lemmon v. Snap, Inc.*, 995 F.3d 1085, 1091 (9th Cir. 2021)).  The Court finds the first prong of the *Barnes* test is met.

### 2. *Publisher or Speaker*

The second prong of the *Barnes* test requires courts to ask "whether the claims 'inherently require[ ] the court to treat the defendant as the "publisher or speaker" of content provided by another.'"  *Dyroff*, 934 F.3d at 1098 (alteration in original) (quoting *Barnes*, 570 F.3d at 1102).  "The broad construction accorded to [S]ection 230 as a whole has resulted in a capacious conception of what it means to treat a website operator as the publisher or speaker of information provided by a third party."  *Backpage.com*, 817 F.3d at 19.  "[M]any causes of action might be premised on the publication or speaking of what one might call 'information content.'"  *Id.* (quoting *Barnes*, 570 F.3d at 1101).  A court must therefore look to "what the duty at issue actually requires:" i.e., "whether the duty would necessarily require an internet company to monitor third-party content."  *HomeAway.com, Inc. v. City of Santa Monica*, 918 F.3d 676, 682 (9th Cir. 2019).

---

[3] Section 230 defines "interactive computer service" to mean "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions." 47 U.S.C. § 230(f)(2).

1    Grindr argues Doe's claims seek to hold Grindr liable as a publisher or speaker of information provided by another. (Mot. 6–9.) Doe contends his claims do not treat Grindr as a publisher or speaker because he seeks to hold Grindr liable for the design, development, and sale of a defective product—the App—that matches children with adults for in-person sexual encounters and facilitates the exchange of sexually explicit material. (Opp'n 3–5; FAC ¶¶ 96, 98, 111, 122, 131, 152.) Ultimately, although Doe frames Grindr's minimal age verification and user matching functions as a product defect, Doe's claims seek to hold Grindr liable based on its publishing of user content.

The root of Doe's claims is that, through the Grindr App, Doe and adult men were matched based on their user profiles and geographical proximity, allowing Doe and the adult men to exchange direct messages and personal information, leading to the in-person meetings and sexual assaults. But Grindr's match function relies on and publishes a user's profile and geolocation data, which is third-party content generated by the user. *See Dyroff*, 934 F.3d at 1098 (finding that an app's features, functions, and algorithms that analyze user content and recommend connections "are tools meant to facilitate the communication and content of others"); *Herrick v. Grindr LLC*, 765 F. App'x 586, 590, 591 (2d Cir. 2019) (summary order) (recognizing that Grindr's geolocation feature is based on a user's mobile device longitude and latitude). Grindr received the user content from Doe and the adult men and published it via the match feature's notification. If Grindr had not published that user-provided content, Doe and the adult men would never have met and the sexual assaults never occurred. *See Doe v. MySpace, Inc.*, 528 F.3d 413, 419–20 (5th Cir. 2008) (rejecting as artful pleading plaintiffs' contention that their negligence claims were predicated on the lack of basic social media safety features to protect minors from communicating with predators). Thus, Doe's claims require the Court to treat Grindr as a publisher of user content.

Doe relies on *Lemmon v. Snap*, in which the Ninth Circuit held Section 230 immunity inapplicable to the alleged product liability claims, to argue Doe's product liability claims here are not barred. (Opp'n 4–5.) In *Lemmon*, the plaintiffs' claims

turned on the defendant's design of Snapchat, specifically a particular filter available to users called the "Speed Filter." 995 F.3d at 1091. Snapchat's Speed Filter encouraged users to drive at excessive speeds and simultaneously post content. *Id.* at 1091–92. The harm—fatal reckless driving—flowed directly from the design defect—the Speed Filter. *See id.* at 1092. Whether the user posted content for Snapchat to publish was immaterial. *Id.* at 1092–93. The Ninth Circuit held that the product liability claims alleged did not treat the defendant as a publisher or speaker because the defendant could fulfill its duty by changing the filter, which did not involve third-party content. *Id.*

Doe argues, à la *Lemmon*, that his claims do not treat Grindr as a publisher because Grindr could fulfill its alleged duty by changing its App features without involving third-party content. (Opp'n 5.) But the facts here differ from *Lemmon* and warrant a different result. The harm Doe alleges does not flow solely from the product software. Rather, the harm animating Doe's claims is directly related to the geolocation and content provided by users, which facilitates the match, direct messages, in-person meetings, and ultimately here, Doe's assaults. Unlike *Lemmon*, where the harm from reckless fast driving could occur independently of any publishing or editing, here, Doe's assaults could not have occurred without Grindr's publication via the match of user geolocation and profile data. *See Backpage.com*, 817 F.3d at 20 (finding there would be no harm without the content advertising the trafficked victims); *Jackson v. Airbnb, Inc.*, No. 2:22-cv-3084-DSF (JCx), 2022 WL 16753197, at *2 (C.D. Cal. Nov. 4, 2022) (finding there would be no harm without the content unlawfully selling guns).

Ultimately, the alleged "defect" here is only relevant to Doe's injury to the extent it made it easier or more difficult for other users to communicate with Doe, and thus Doe seeks to hold Grindr liable for its failure to regulate third party content. *See Herrick*, 765 F. App'x at 590 ("Grindr's alleged lack of safety features is only relevant to Herrick's injury to the extent that such features would make it more difficult for his

1 [harasser to post content] or make it easier for Grindr to remove [it]." (internal
2 quotation marks omitted)). Furthermore, the Ninth Circuit considers a defendant
3 website's functions, operations, and algorithms—like Grindr's match feature here—to
4 be editorial choices, made to facilitate the communication of others. *See Dyroff*,
5 934 F.3d at 1098 (holding that features, functions, and algorithms which analyzed user
6 content and recommended connection "are tools meant to facilitate the communication
7 and content of others"); *see also Twitter, Inc. v. Taamneh*, 598 U.S. 471, 499 (2023)
8 (noting that Twitter's "'recommendation' algorithms are merely part of [its]
9 infrastructure").

10 As Doe's claims in essence seek to impose liability on Grindr for failing to
11 regulate third-party content, they require that the Court treat Grindr as a publisher or
12 speaker. As such, the Court finds the second prong of the *Barnes* test is met.

13         3.      *Third-Party Content*

14 Under the third prong of the *Barnes* test, courts must determine whether a
15 plaintiff's allegations demonstrate that the published material came from a third-party
16 content provider. *Dyroff*, 934 F.3d at 1097 (citing *Barnes*, 570 F.3d at 1100–01). If
17 "the defendants are 'responsible in part, for the creation or the development of the
18 offending content on the internet,'" they are not entitled to Section 230 immunity.
19 *L.W. v. Snap Inc.*, --- F. Supp. 3d ---, No. 22-cv-619-LAB-MDD, 2023 WL 3830365,
20 at *5 (S.D. Cal. June 5, 2023) (quoting *Lemmon*, 995 F.3d at 1093).

21 Grindr contends the "genesis of [Doe's] injuries is user-generated content . . .
22 that [Doe] claims he should not have been permitted to send or receive." (Mot. 8.) In
23 response, Doe argues that Grindr materially contributed to Doe's assaults by matching
24 geographically proximate children with adults on the Grindr App. (Opp'n 10–11.)
25 This addresses neither the third *Barnes* prong nor Grindr's moving argument. As
26 discussed above, the match function utilizes third-party content provided by App
27 users, namely the geolocation data and user profiles. Accordingly, the Court finds that
28 Grindr is not an "'information content provider[] because [it] did not create or develop

information' but rather 'published information created or developed by third parties.'" *See Bride*, 2023 WL 2016927, at *6 (quoting *Dyroff*, 934 F.3d at 1098).

Doe's negligence and defective warning claims are not materially different from the product liability claims in this regard, as they also rely on published content from App users. Had third parties, including Doe, refrained from sharing geolocation data and communications, the claims that Grindr failed to warn users of the risk of sexual exploitation or negligently misrepresented the App's safety would not be cognizable. *See id.* (finding the nature of the plaintiff's legal claim did not alter the conclusion that plaintiff's claims were all predicated on content developed by third parties); *see also Herrick*, 765 F. App'x at 591 (finding failure to warn claim was "inextricably linked" to Grindr's alleged failure to monitor and regulate third-party content).

Accordingly, the Court finds the third prong of the *Barnes* test is met.

4. *Doe's Claims*

Doe asserts six claims, for defective product design, defective product manufacturing, defective product warning, negligence, negligent misrepresentation, and violation of TVPRA. As discussed above, each of these claims is predicated on Grindr's failure to monitor and regulate user's profiles and content, and thus "attempt[s] to hold [Grindr] liable for failing to provide sufficient protections to users from harmful content created by others." *Backpage.com*, 817 F.3d at 21. Doe cannot sue Grindr "for third-party content simply by changing the name of the theory." *Barnes*, 570 F.3d at 1102. Thus, these claims are barred by Section 230 immunity.

This result is consistent with courts' treatment of Section 230 immunity, in the Ninth Circuit and elsewhere. For instance, the Fifth Circuit in *Doe v. MySpace* found Section 230 immunity barred suit in circumstances very similar to those here, where a minor claimed to have been sexually assaulted by someone she met through the defendant's website, and sought to hold the website operator liable for failing "to implement basic safety measures to protect minors." 528 F.3d at 419–20. The court in *MySpace* found Section 230 immunity applied because the plaintiffs' claims in

essence sought to hold the website operator liable for its "role as a publisher of online third-party-generated content." *Id.* Similarly, the First Circuit in *Jane Doe No. 1 v. Backpage.com* found that Section 230 immunity barred claims against a website operator, where the plaintiffs claimed to have been trafficked through postings on the website. 817 F.3d at 17, 21. The court in *Backpage.com* held that "a website operator's decisions in structuring its website and posting requirements are publisher functions entitled to section 230(c)(1) protection." *Id.* at 22.

Closer to home, here in the Central District of California, a district court applying Ninth Circuit precedent in *Bride v. Snap* found that Section 230 immunity barred claims against a website operator for bullying and harassment online, even though plaintiffs framed their claims as premised on defendant's defective design feature that allowed anonymous posting. 2023 WL 2016927, at *1, 5. The court in *Bride* found that each of the plaintiffs' claims were barred by Section 230 because the plaintiffs sought to hold defendants liable for "failing to adequately regulate end-user's abusive messaging" and the claims "[we]re directed at [d]efendants' content moderation policies." *Id.* at 6–7; *see also Jackson*, 2022 WL 16753197, at *1–2 (dismissing claims as barred by Section 230 immunity, where plaintiffs sought to hold defendant liable for failing to curb the illegal sale of guns on its platform).

In this case, "third-party content is like Banquo's ghost: it appears as an essential component of each and all of [Doe's] claims." *Backpage.com*, 817 F.3d at 22. As each of Doe's claims rests on activity protected by Section 230, he cannot "plead around Section 230 immunity." *Dyroff*, 934 F.3d at 1098.

**B.     Section 1595 of the TVPRA**

Doe argues that even if the Court finds that Section 230 applies to the present suit, his TVPRA claim is excepted from that immunity. (Opp'n 11.)

As discussed above, Section 230 generally immunizes interactive computer service providers from liability for user content. *Does 1–6 v. Reddit, Inc.*, 51 F.4th 1137, 1139 (9th Cir. 2022), *cert denied sub nom. Does v. Reddit, Inc.*, 143 S. Ct. 2560

(2023). "However, pursuant to the Allow States and Victims to Fight Online Sex Trafficking Act of 2018 (FOSTA), [S]ection 230 immunity does not apply to [civil] child sex trafficking claims" brought under 18 U.S.C. § 1595, "*if* the 'conduct underlying the claim' also violates 18 U.S.C. § 1591, the criminal child sex trafficking statute." *Id*. (quoting 47 U.S.C. § 230(e)(5)(A)). FOSTA thus provides an exception to Section 230 immunity for some sex trafficking claims. *See id.*

Section 1595 of the TVPRA provides a civil cause of action for violations of federal trafficking laws. *See* 18 U.S.C. § 1595. Section 1591 is the federal criminal child sex trafficking statute and "covers both perpetrators and beneficiaries of trafficking." *Reddit*, 51 F.4th at 1141. To state a claim for direct perpetrator liability, a plaintiff must allege the defendant knowingly (1) "recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person," knowing or recklessly disregarding that the person may be a minor and "will be caused to engage in a commercial sex act." 18 U.S.C. § 1591(a)(1). A claim for beneficiary liability requires allegations that the defendant knowingly "(2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1)." *Id.* § 1591(a)(2).

The Ninth Circuit recently addressed the interplay of Section 230 immunity and the FOSTA exception for sex trafficking claims in *Does 1–6 v. Reddit*. The court concluded that, "for a plaintiff to invoke FOSTA's immunity exception, []he must plausibly allege that the website's own conduct violated section 1591." *Id.* at 1141.

> [T]he defendant must have actually engaged in some aspect of the sex trafficking. To run afoul of § 1591, a defendant must knowingly benefit from and knowingly assist, support, or facilitate sex trafficking activities. Mere association with sex traffickers is insufficient absent some knowing participation in the form of assistance, support, or facilitation. The statute does not target those that merely turn a blind eye to the source of their revenue. And knowingly benefitting from participation in such a venture requires actual knowledge and a causal relationship between

affirmative conduct furthering the sex-trafficking venture and receipt of a benefit.

*Id.* at 1145 (internal alterations, citations, and quotation marks omitted).

Grindr contends Doe cannot evade Section 230 immunity through the FOSTA exception because Doe fails to state a claim under § 1591. (Mot. 9–14.) Doe argues that he plausibly states a claim for direct and beneficiary TVPRA liability under § 1591, so Section 230 does not bar his sex trafficking claim. (Opp'n 11–15.)

In support of this claim, Doe asserts that Grindr knowingly recruits minors, including Doe, to use the App, (Opp'n 11), and Grindr knows that sexual predators target App users based on media reports, lawsuits, and an academic study reporting that many gay people used the Grindr App when they were minors, (FAC ¶¶ 78–81, 158). Doe alleges "Grindr knowingly benefits financially and by increasing traffic to its platform and collecting ad revenue therefrom in a venture which" results in sex trafficking, (*id.* ¶ 146), and that "[t]he sex acts occasioned by children through Grindr constitute commercial sex acts insofar as Grindr profits from all users through the sale of ads," (*id.* ¶ 156; *see also* Opp'n 15 (arguing that Grindr "knew, or recklessly disregarded, that it caused sex acts between minors and adults . . . and that Grindr financially benefitted from those sex acts through advertising revenue").)

The Court first notes that Doe expressly alleges he informed Grindr he was over eighteen, (*see* FAC ¶ 49), so his direct perpetrator claim fails on this record because he cannot now assert that Grindr knew or should have known that *Doe* was a minor. *See* 18 U.S.C. § 1591(a)(1) (providing direct perpetrator liability where a defendant knowingly recruits a person for a commercial sex act knowing or recklessly disregarding that the person is a minor).

More importantly, "*Reddit* is explicit that attenuated allegations like [Doe's] are insufficient to plausibly suggest that [Grindr] knowingly participated in or benefited from a sex trafficking venture." *See L.W.*, 2023 WL 3830365, at *7 (citing *Reddit*, 51 F.4th at 1145). That Grindr may have had constructive knowledge of lawsuits or

media accounts concerning sexual predators using the Grindr App in their predations, (*see* FAC ¶ 158), or that it derived revenue "from all users through the sale of ads," (*id.* ¶ 156), does not establish that Grindr violated § 1591 "by directly sex trafficking" *Reddit*, 51 F.4th at 1145, or "knowingly benefit[ed] from knowingly participating in child sex trafficking," *Doe #1 v. Twitter, Inc.* (*Twitter*), Nos. 22-15103 & 22-15104, 2023 WL 3220912, at *1 (9th Cir. May 3, 2023) (unpublished) (applying *Reddit*). Doe's well pleaded allegations simply do not implicate Grindr in a "causal relationship between" its own "affirmative conduct furthering the sex-trafficking venture" and its receipt of resulting ad revenues. *See Reddit*, 51 F. 4th at 1145–46 (finding allegation that defendant makes money from advertising on its site insufficient to connect the child pornography posted with the revenue generated). Here, just as in *Reddit*, "[t]aken as true, [Doe's] allegations suggest only that [Grindr] 'turned a blind eye' to the unlawful content posted on its platform, not that it actively participated in sex trafficking." 51 F.4th at 1145.

Because Doe does not allege that Grindr's own conduct violated § 1591, his TVPRA claim, whether direct or beneficiary, fails.

**C.  Leave to Amend**

Section 230 immunizes Grindr from Doe's claims, and Doe fails to state a claim that Grindr violated § 1591. Accordingly, all of Doe's claims are subject to dismissal.[4]

---

[4] In opposing Grindr's Motion, Doe relies extensively on a pair of district court decisions out of Oregon, *A.M. v. Omegle.com, LLC*, 614 F. Supp. 3d 814 (D. Or. 2022), and the subsequent *A.M. v. Omegle.com, LLC*, No. 3:21-cv-01674-MO, 2023 WL 1470269 (D. Or. Feb. 2, 2023). The court in *Omegle,com* found, under similar facts, that the plaintiff's product liability and sex trafficking claims were not barred. To the extent the Court's conclusions herein differ from those in *Omegle.com*, the Court must respectfully disagree. Regarding the product liability claims, Section 230 immunity is "quite robust." *See, e.g.*, *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1123 (9th Cir. 2003). The Court cannot escape that the claims here turn on Grindr's treatment of third-party provided content, bringing them within the robust immunity provided by Section 230, and outside the excepted product liability claims recognized in *Lemmon*, 995 F.3d 1085. Regarding the sex trafficking claims, the Court reads the statute and the Ninth Circuit's decisions in *Reddit* and *Twitter* to require something more than the attenuated allegations of TVPRA liability pleaded here. *See Reddit*, 51 F.4th at 1145; *Twitter*, 2023 WL 3220912, at *1.

Under Rule 15(a), leave to amend "shall be freely given when justice so requires," but the "decision of whether to grant leave to amend nevertheless remains within the discretion of the district court." *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008). The liberal leave to amend under Rule 15 does not apply when it is clear amendment would be futile. *Ebner v. Fresh, Inc.*, 838 F.3d 958, 968 (9th Cir. 2016). Here, in light of the robust immunity provided by Section 230 and because the Court finds the core theory underlying all of Doe's claims seeks to treat Grindr as a "publisher or speaker" of third-party content provided by App users, the Court finds that amendment would be futile. *See Bride*, 2023 WL 2016927, at *8 (citing *Sikhs for Just., Inc. v. Facebook, Inc.*, 697 F. App'x 526 (9th Cir. 2017) (affirming district court's dismissal with prejudice because leave to amend would have been futile where plaintiff's claim was barred by the CDA)). Accordingly, dismissal is with prejudice and without leave to amend.

## V. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Grindr's Motion to Dismiss and dismisses the First Amended Complaint with prejudice and without leave to amend. (ECF No. 37.)

**IT IS SO ORDERED.**

December 28, 2023

_____
OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE